NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EMPRESAS LOURDES, S.A.<br><br>Plaintiff,<br><br>v.<br><br>ARTHUR KUPPERMAN, E. ROSS BROWNE, PAULETTE KRELMAN and PGB INTERNATIONAL, LLC,<br><br>Defendants. | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civil Action No. 06-cv-5014(DMC) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon Plaintiff's request for an Order to Show Cause and for Writs of Attachment, which were granted by this Court on November 20, 2006, restraining Defendants from selling, transferring, encumbering or otherwise alienating or impairing their interests in certain real property as well as their assets in checking, savings, investment, or other banking or security accounts. All Defendants submitted opposition to the Order to Show Cause, moving to dissolve the writs of attachment issued by this Court on November 20, 2006. Defendants E. Ross Browne (Browne) and Paulette Krelman (Krelman) moved to dismiss Plaintiff's verified complaint. This Court heard oral argument on January 24, 2007. After carefully considering the submissions of the parties and the oral argument record, and based on the following, this Court finds that the Order to Show Cause should be **upheld** and the Writs of Attachment were proper and should also be **upheld**. This Court finds that Defendant Krelman's motion to dismiss is **denied**.

**I. Background**

Plaintiff Empresas Lourdes is organized and exists under the laws of the Republic of Chile with its principal place of business in Santiago, Chile. Its submissions in support of its request for an order to show cause mirror those of Merrill Lynch in the Merrill Lynch v. Kupperman, *et al.* 06-cv-4802 (DMC) matter and name the very same Defendants, and that business Opinion was entered by this Court on August 6, 2007. Plaintiff supplied Defendant Arthur Kupperman (Kupperman), as incorporator of Pittra G.B. International (Pittra), with $151,541.00 worth of grape juice concentrate between October 29, 2002, and December 4, 2002. Pittra is not named as a defendant in this action because it is a debtor in a pending bankruptcy action, and is thus subject to an automatic stay. Plaintiff alleges in its verified complaint that Defendants never paid any of the debts owed to it by Pittra.

Defendants Krelman and Browne have moved to dismiss Plaintiff's verified complaint. Defendants Kupperman, Browne, Krelman and PGB International, LLC. (PGB) seek discontinuance of the Writs of Attachment pursuant to the Order to Show Cause issued on November 20, 2006. The Order to Show Cause in this case restrains Defendants from selling, transferring, encumbering or otherwise alienating or impairing their interests in certain real property as well as their assets in checking, savings, investment, or other banking or security accounts. This Court has signed Writs of Attachment as against Defendants' interests in real property, life insurance policies, bank accounts, and stock.

As detailed in Plaintiff's Verified Complaint, this case involves allegations of fraud and fraudulent transfer of assets to defraud Plaintiff, a creditor of Defendants, officers and shareholders of the now bankrupt Pittra. Plaintiff alleges that it supplied Pittra with grape juice concentrate in the

amount of $151,541.00 and that Pittra failed to pay it, and any part of the debt. (Pl.'s Verified Complaint, ¶¶ 15-16). Plaintiff alleges that Kupperman, as incorporator, agent and officer of Pittra, promised to pay the debt owed to Plaintiff and misrepresented to Plaintiff that payments on the debt had been made. (Pl's Verified Complaint, ¶¶ 16-21). Plaintiff further alleges that Defendant Kupperman formed and became the agent of PGB. (Pl's Verified Complaint, ¶ 22). Defendant Kupperman never notified Plaintiff that he had formed PGB. (Pl's Verified Complaint, ¶ 24).

Plaintiff alleges that Defendants Kupperman, Krelman and Browne caused Pittra to transfer substantially all of Pittra's assets to PGB, and that this transfer was concealed from Plaintiff. (Pl's Verified Complaint, ¶36). On June 5, 2003, Pittra and PGB entered into an Asset Purchase Agreement, on behalf of PGB by Krelman and on behalf of Pittra by Kupperman. This agreement provided that Pittra would sell, and PGB would purchase, various business assets of Pittra. The agreement further stipulated that PGB would not assume any liabilities or obligations of Pittra, other than those specifically associated with the customer contracts purchased by PGB arising after the closing date of the transaction. Plaintiff alleges that Defendants retained possession and control of the property transferred after the asset sale occurred. Plaintiff alleges it had no notice of the subject sale. (Pl's Verified Complaint, ¶¶ 38-45).

Plaintiff further alleges that after the asset transfer, Defendants continued the same business with only minimal changes. At all relevant times, Defendants Kupperman, Krelman and Browne were the sole officers, directors and shareholders of both PGB and Pittra. (Pl's Verified Complaint, ¶¶ 46-47). Essentially, Plaintiff asserts that Defendants created and controlled a parallel limited liability company, PGB, which Defendants used to drain the assets of Pittra and divert its business opportunities. In essence, Defendants are accused of engaging in deceit and fraud in order to avoid

paying the debt owed by Pittra, and in turn, by Defendants as agents and shareholders of Pittra and PGB.

On September 29, 2006, the Hon. Morris Stern, presiding U.S.B.J. held a hearing on a bankruptcy petition by Pittra, encaptioned Stanziale v. Kupperman, *et al*,. Judge Stern strongly suggested that the issues and claims asserted against PGB be more appropriately pursued by its creditors, including Lourdes, in a non-bankruptcy forum. Lourdes did so on October 19, 2006.

## II. Standards of Review

### A. Order to Show Cause

Local Civil Rule 65 qualifies the standard for injunctive relief. In determining whether a preliminary injunction should be granted, a district court must consider four factors:

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting preliminary relief will be in the public interest.

ACLU of New Jersey v. Black Horse Pike Reg'l Bd. of Educ., 84 F.3d 1471, 1477 (3d Cir. 1996); see also CIBA-GEIGY Corp. v. Bolar Pharm. Co., Inc., 747 F.2d 844, 850 (3d Cir. 1984) cert. denied 471 U.S. 1137 (1985). Plaintiff bears the burden of showing that these factors weigh in favor of granting the injunction. Black Horse Pike, 84 F.3d at 1477. Additionally, the Third Circuit has repeatedly held that a preliminary injunction is an "extraordinary remedy" that "should be granted only in limited circumstances." Kos Pharm. Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004); see also Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994).

**B. Writs of Attachment**

New Jersey Rule of Court 4:60-5(a), applicable pursuant to Federal Rule of Civil Procedure 64, permits a writ of attachment to be issued based on a finding that: (1) there is a probability that final judgment will be rendered in favor of the plaintiff; (2) there are statutory grounds for issuance of the writ; and (3) there is a real or personal property of the defendant at a specific location within this State which is subject to the attachment. Further, N.J.S.A. 2A:15-42(d) authorizes the issuance of a writ of attachment in an action founded upon express or implied contract when the defendant has fraudulently contracted the debt or incurred the demand. Construction Drilling, Inc. v. Chusid, et. al., 63 F. Supp.2d 509 at 512.

## III. Discussion

**Opposition by Defendants Browne and Kupperman**

Browne and Krelman initially filed opposition to the Order to Show Cause. Krelman's papers state that she "shall rely upon the documents filed by Defendant Browne in support of her opposition to the Order." PGB and Kupperman filed opposition shortly thereafter and their opposition is discussed below.

Lourdes Lacks Necessary Certificate of Authority to Maintain Action.

In their papers, Defendants Browne and Kupperman argue that New Jersey law prohibits a foreign corporation from maintaining any action until such corporation has obtained a certificate of authority from the State. Browne cites to N.J.S.A. 14A:13-11(1):

> "[n]o foreign corporation transacting business in this State without a certificate of authority shall maintain any action or proceeding in any

> court of this State until such corporation shall have obtained a certificate of authority." Id.

In support of Defendant Browne's opposition, Mark A. Roney, counsel for Browne, submitted a certification which states that Plaintiff did not obtain the necessary certificate of authority. Plaintiff does not dispute that it did not obtain a certificate of authority. This Court finds that one transaction, selling $151,541.00 worth of grape juice does not rise to the level of transacting business. Therefore, Plaintiff did not need a certificate of authority, so engaging in the single subject transaction without a certificate of authority does not bar Plaintiff's cause of action.

No Statutory Basis for Attachment of Individual Assets

In further opposition to the Order and Writs, Browne argues that this action is nothing more than a supplemental proceeding based on various tort theories to seek recovery. Essentially, Browne and Kupperman argue that Plaintiff's Verified Complaint and supporting papers are mere mirror images of the papers filed by Merrill Lynch, with one dispositive distinction. Browne argues that where Merrill Lynch alleged both a contractual relationship with Browne, as evidenced by his Guaranty of Pittra's obligations and a fraud arising out of that contractual relationship. Browne argues that no such contractual relationship between him and Plaintiff exists and that Plaintiff cannot show any fraud by Browne regarding the transactions which led to the Merrill action. Furthermore, Plaintiff does not have a contractual relationship with any of the defendants.

Browne cites to N.J.S.A. 2A:15-41 to argue that if a plaintiff alleges a tort without a contractual relationship, that plaintiff is only entitled to an attachment if the claim is based upon:

> "(a) an outrageous battery or a mayhem, (b)a claim of damages for the misconduct or neglect of a public officer or (c) a wilful or malicious act and the defendant is a nonresident or is about to remove from the

state." N.J.S.A. 2A:15-41.

Browne claims that none of those enumerated requirements are present in Plaintiff's Verified Complaint as against Browne and again reminds that no contractual relationship exists between Browne and Plaintiff. Browne cites to Allied Financial Corp. v. Steel Panel Sales Corp., 86 N.J. Super. 65, 74 (App. Div. 1964). In Allied, the plaintiff asserted that defendant, Steel Panel Sales Corp., fraudulently obtained funds using forged documents. The Allied court found that the plaintiff's claims against the defendant did not arise out of a contractual relationship and, as a result, no attachment could be issued as to the defendant, personally.

In reviewing the Allied decision, it is apparent that, although a strong factual connection existed between the underlying contract and the individual defendant in that case, the court refused to issue writs of attachment against the individual defendant's personal assets because the plaintiff failed to show that the individual defendant was in receipt of any funds from Allied.

The Allied case, however, has received some negative treatment. In distinguishing Allied, the District Court held that "[i]n order to warrant the attachment remedy, [a] plaintiff [is] required to present only a prima facie case that a contractual relationship existed between [it]self and the defendant." Construction Drilling, Inc. v. Chusid, *et al*, 63 F.Supp.2d 509, 512 (D.N.J. 1999). The Court explained that "[c]ontrary to defendants' narrow interpretation [Allied] holds that '[t]he gravamen of the ensuing cause of action...need not consist of a breach of the contract between the parties in the ordinary sense; it may be constituted by fraudulent treatment of the plaintiff by the other party during the relationship." Id at 512.

Based on the District Court's holding in Construction Drilling, Inc., the facts alleged here suffice to show that there was sufficient fraudulent treatment of Plaintiff by Browne to warrant the

Order and concomitant Writs of Attachment. In its Verified Complaint, Plaintiff alleges that "Defendants Kupperman, Krelman and Browne at some time shortly before or after June 5, 2003, caused Pittra to transfer substantially all of Pittra's assets to PGB, which transfer defendant concealed from Plaintiff." (Pl.'s Verified Complaint, ¶36). Further, Plaintiff alleges that Defendants Kupperman, Krelman and Browne executed an asset purchase agreement between PGB and Pittra. (Id. at ¶ 37). Of even more indication of Browne's involvement is that "[a]t all times relevant hereto, Defendants Kupperman, Krelman and Browne were the sole officers, directors, shareholders and/or members of both Pittra and Defendant PGB. (Id. at ¶ 47).

In upholding the writs of attachment against the defendant in Construction Drilling, Inc., the Court specifically mentioned that "the [individual defendant] incorporated International Financial, the admitted parent company of Caribbean Bank; that the [individual defendant] [was] the sole signatory on a bank account opened in the name of [the corporate defendants]." Construction Drilling, Inc., 63 F. Supp. 2d at 512-13. Therefore, it appears that Plaintiff has made out a *prima facie* case that a contractual relationship existed between Plaintiff and Defendants Browne, Krelman, Kupperman and PGB.

No Reasonable Likelihood of Success on Merits

Defendants Browne and Kupperman also argue that there is no reasonable likelihood of success on Plaintiff's claims against him because he is not personally liable for judgments against Pittra and that transfer of Pittra's assets was to PGB, not Browne or Krelman as individuals. However, as has already been mentioned, Plaintiff's Verified Complaint alleges that any distinction between the corporate defendants and individual defendants is illusory and semantic.

Writs Do Not Apply to Mrs. Browne's Interest in Jointly Held Property

Finally, Browne argues that the Writs cannot attach to the full interests of Browne and his spouse when the asset is marital property, unless both the husband and wife are liable to the creditor. Pascale v. Pascale, 140 N.J. 583 (1995); Portner v. Portner, 93 N.J. 215, 219 (1983); Rothman v. Rothaman, 65 N.J. 219, 229 (1974). However, in reviewing the cases provided by Defendant Browne for this proposition, it appears that the context in which courts discussed the dissolution of marital property was that of divorce and equitable distribution. It is, at best, quite a stretch to cite to these cases for the proposition that a creditor's ability to attach a debtor's assets is not unfettered.

**Opposition by Defendants PGB International, LLC. and Kupperman**

Concurrent Bankruptcy Proceedings Automatically Stay this Action

Defendants PGB and Kupperman argue that Section 362(a)(1) of the Bankruptcy Code provides in relevant part that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of...the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1).

In support of this argument, PGB and Kupperman cite a Second Circuit case which held that "a third-party action to recover fraudulently transferred property is properly regarded as undertaken 'to recover a claim against the debtor' and subject to the automatic stay pursuant to § 362 (a)(1)". In re Colonial Realty Co., 980 F.2d 125, 131-32 (2d Cir. 1992). Defendants contend that the debtor in this case is Pittra G.B. International, Inc., which previously filed a petition in bankruptcy in February 2006. Defendants argue that Plaintiff is barred from asserting the claims alleged in this action because Plaintiff has not obtained relief from the automatic stay in due to the concurrent

bankruptcy proceedings.

However, as made clear at oral argument, Plaintiff has independent claims from claims a trustee would bring against Defendants in this action, and no named Defendants here are creditors or debtors of the pending bankruptcy action, which has stayed proceedings against Pittra.

Plaintiff is Not Entitled to Attachments for Lack of Contractual Relationship

As Defendants Browne and Krelman do, PGB and Kupperman argue that the lack of a contractual relationship between Plaintiff and Defendants prevents them from obtaining writs against certain property of Defendants. However, based upon Construction Drilling *supra*, no such contractual relationship is necessary or required for this Court to have properly issued the Writs of Attachment.

## IV. Conclusion

Based on the foregoing, it is apparent that Plaintiff has the right to bring this action against Defendants in this matter. Also, this action is based on independent claims of those in the bankruptcy proceeding, which has stayed action against Pittra. The Writs of Attachment and Order to Show Cause by this Court are upheld and Defendant Krelman's motion to dismiss Plaintiff's Verified Complaint is denied. An appropriate Order accompanies this Opinion.

S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date: September 24 , 2007
Orig: Clerk's Office
cc: Counsel of Record
The Honorable Mark Falk, U.S.M.J.
File